PHILIP WILSON *v.* G. FRANKLIN and JOSEPH BURLESON.

A Lieutenant and a Private in the army of the United States, who by command of their Captain, took from a citizen on the 17th of May 1865, two horses, were thereby guilty of a trespass.

TRESPASS, tried before *Shipp, J.* at Spring Term 1868, of the Superior Court of MITCHELL.

The defendants, besides the General Issue, pleaded that they were soldiers of the Federal Army, and in taking the horses acted under orders of superior officers.

A special verdict was found, setting forth the details of the taking; that it occurred on the 16th day of May 1865, in Mitchell County, by order of the captain of a United States Cavalry Company to which the defendants belonged; and that General Joseph E. Johnston had surrendered on the 25th of April before, and General J. G. Martin, commanding that District of North Carolina which included Mitchell County, had surrendered on the 7th day of the same month.

His Honor thereupon considered that the defendants were

guilty of the alleged trespass, and gave judgment for the damages assessed. The defendants appealed.

No counsel for the appellants.

*Phillips & Merrimon,* contra.

RODMAN, J. The defendant Franklin was a Lieutenant, and the defendant Burleson was a private in the United States Army. On the 17th of May 1865, by command of one Jenkins, who was a Captain in the United States Army, they took from the possession of the plaintiff two horses. The case states, that at the time mentioned, there were no armed troops in Western North Carolina, in hostility to the United States and we know as a matter of public history, that there were none in any part of the State. The rebellion, so far as North Carolina was concerned had been entirely suppressed. It does not appear that in seizing the horses, Captain Jenkins acted under the orders of the Government of the United States, or of any superior officer. No question arises as to what might have been the rights of the armies of the United States during the existence of actual hostilities. If it should be conceded that the laws of North Carolina for the protection of private rights, were suspended during the war, as regarded the government and the military authorities of the United States, upon the suppression of the rebellion those laws resumed their original vigor, at least as against the unauthorized acts of the soldiery. There is no error in the judgment, and it is affirmed.

PER CURIAM.                                        Judgment affirmed.